UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CELENA LOVEDAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-381 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the Court on Plaintiff's Motion for Summary Judgment [Doc. 12] and the Commissioner's Motion for Summary Judgment [Doc. 14]. Plaintiff Celena Loveday seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On September 7, 2006, plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began April 30, 2006. [Tr. 172-77]. After her application was denied initially and also denied upon reconsideration, plaintiff requested a hearing. On February 11, 2009, a hearing was held before an ALJ to review determination of plaintiff's claim. [Tr. 42-61]. The ALJ issued his decision finding that plaintiff was not disabled on May 14, 2009. In an order dated August 27, 2009, the Appeals Counsel remanded the claim back to the ALJ, because the decision was not accompanied by any list of exhibits and it

did not discuss the findings of Eva Misra, M.D., a state agency non-examining physician. [Tr. 87-88].

On August 30, 2010, a second hearing was held before a different ALJ. [Tr. 29-42]. On November 23, 2010, the ALJ found that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since September 7, 2006, the application date (20 C.F.R. 416.971, *et seq.*).

2. The claimant has the following severe impairments: left plantar fasciitis, left ankle synovitis, and obesity. (20 C.F.R. 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 416.967(c), which includes lifting and carrying up to 50 pounds occasionally and up to 25 pounds frequently, sitting for up to 6 hours during an 8-hour workday with normal breaks, and standing or walking for up to 6 hours during an 8-hour workday with normal breaks.

> 5. The claimant is capable of performing past relevant work as a checker, laundry and related. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 416.965).
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since September 7, 2006, the date the application was filed (20 C.F.R. 415.920(f)).

[Tr. 16-24].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case

5

de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, a plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

6

## IV. POSITIONS OF THE PARTIES

Plaintiff argues that the ALJ erred in determining that she was not disabled. Plaintiff maintains that the ALJ erred by failing to consider Listing 12.05B of 20 C.F.R Part 404, Subpart P, Appendix 1. Plaintiff also argues that the ALJ erred in evaluating the medical evidence in the record. Specifically, plaintiff contends that the ALJ erred by affording little weight to the opinion of Wayne Lanthorn, Ph.D.

The Commissioner maintains that the ALJ's decision is supported by substantial evidence and remand is not warranted. The Commissioner concedes that the ALJ did not discuss Listing 12.05, but the Commissioner maintains that the ALJ was not required to do so because he provided a detailed discussion explaining why he did not find that plaintiff had a severe mental impairment. The Commissioner asserts that plaintiff failed to provide a valid IQ score within the range of Listing 12.05B and that the ALJ's treatment of Dr. Lanthorn's opinion was supported by substantial evidence. Overall, the Commissioner argues that plaintiff has failed to prove that she has a severe impairment that renders her disabled.

## V. ANALYSIS

Because plaintiff's allegations of error are interrelated, the Court will address the allegations together.

The Commissioner directs the Court to step two of the disability determination process. The Commissioner cites 20 C.F.R. § 416.920(a)(4), in arguing that because "Plaintiff's alleged mental impairments were determined to be not severe at step two,

7

Plaintiff could not have met a mental listing at step three." [Doc. 15, p. 9]. While the sequential step analysis undeniably guides the disability determination and is to be taken in sequence, the fact that the ALJ found no mental impairment at step two does not preclude a finding that he erred at step three.

The Court has considered the ALJ's findings and analysis at both steps. At step two the ALJ considered findings by Jodi Castellani, Ph.D., and Ms. Alice Garland, that plaintiff had malingered in previous intelligence tests. These sources' recollections and notes about plaintiff's visits with them strongly indicate malingering, [*see* Tr. 362-69, 346-53], and the ALJ discussed many of the examples of possible malingering, such as plaintiff's incredibly low score on the Rey 15-Item Test, [Tr. 21].

After discussing Dr. Castellani and Ms. Garland's findings, the ALJ states, "Accordingly, the undersigned does not accept the conclusion of B. Wayne Lanthorn, Ph.D., that the claimant is functioning in the mild mental retardation range with an overall full scale IQ of 53." [Tr. 18]. The ALJ later adds that he has given little weight to Dr. Lanthorn's findings. [Tr. 21]. The ALJ based this on his finding "that Dr. Lanthrorn's diagnoses and opinion are not consistent with the record as a whole, including the reports of consultative examiner Dr. Catellani and Ms. Garland indicating malingering . . . ." [Tr. 21]. Despite the claims of inconsistency the records reveals the following results:

> 1. On the WAIS test: plaintiff's verbal IQ was 53 (Castellani), 52 (Garland) and 61 (Lanthorn); plaintiff's full scale IQ was 51 (Castellani), 50 (Garland), and 53 (Lanthorn);

8

2. On the WRAT: plaintiff's results were below the 45 level in reading and arithmetic on all three sets of tests; and

3. All three of these evaluators noted these results would put plaintiff in the mild to moderate mental retardation range if valid.

The only difference in the opinions was that Dr. Castellani and Ms. Garland felt plaintiff was malingering because her scores were so low. Dr. Lanthorn's report specifically notes that during his tests plaintiff made a good effort and that her scores were valid. Morever, plaintiff was seen by Dr. Castellani in December 2006, Ms. Garland in January 2007, and Dr. Lanthron in September 2010. Thus, it does not appear that the ALJ's basis for discounting Dr. Lanthorn's findings, that the findings are inconsistent with those of Dr. Castellani, Ms. Garland, or the record as a whole, is borne out by a review of the record.

In support of his finding, the ALJ also notes that "some of the information provided to Dr. Lanthorn by the claimant, such as her assertion that she has a ruptured disc in the lumbar region of her spine, is not supported by the medical evidence of record." [Tr. 22]. However, Dr. Lanthorn's examination of plaintiff referenced by the ALJ was a psychological evaluation, rather than a physical one. [Tr. 462-470]. Further, in seeing Dr. Lanthorn, plaintiff referenced the lumbar problem and noted her physician was "Dr. Maed (sp.)" [Tr. 465]. This appears to be a reference to Phillip Meyette, M.D., whose records of treatment indicated back pain. [*See, e.g.*, Tr. 454]. The Court finds that the ALJ's decision to discount Dr. Lanthorn's findings without further explanation or explanation pertinent to Dr. Lanthorn's examination, as opposed to the examinations performed by other sources, was error.

9

The Court recognizes that "if an ALJ errs by not including a particular impairment as an additional severe impairment in step two of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his residual functional capacity." *Isaacs v. Astrue*, 2009 WL 3672060, *9 (S.D. Ohio Nov. 4, 2009) (citing *Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006)).

The Court finds, however, that the ALJ's failure to afford proper weight or discussion to Dr. Lanthorn's opinion and that the ALJ's failure to analyze plaintiff's condition under Listing 12.05B was not harmless because: (1) Dr. Lanthorn's findings could be interpreted as substantial evidence supporting a finding that plaintiff is mentally retarded under Listing 12.05B, and (2) the ALJ did not cure this error by incorporating the mental limitations found by Dr. Lanthorn into the ALJ's residual functional capacity determination.

Looking first to Listing 12.05B, the listing instructs that where a claimant demonstrates significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested in the development period and has a valid verbal, performance, or full scale IQ of 59 or less, the person is mentally retarded. 20 C.F.R. Pt. 404, Subpt. P., App'x 1.

In this case, plaintiff testified to having been placed in special education classes before dropping out of school in the tenth grade. [Tr. 47]. Plaintiff's school records are somewhat inconclusive but demonstrate that plaintiff was enrolled in special education

10

Case 3:11-cv-00381   Document 16   Filed 09/24/12   Page 10 of 13   PageID #: 94

"resource" classes for an extended time. [Tr. 181-86]. In further reviewing plaintiff's educational records, it appears her proficiency testing results were not passing in math or language in either the ninth or tenth grade. [Tr. 182]. Likewise, they appear to indicate achievement test results in the second to fifth grades with percentile rankings for her age in the 1% to 3% range. Plaintiff's Otis-Lennon tests results indicate a school ability index score of 70 with a ranking in only the third percentile by age and a rank in the fifth grade despite her being almost thirteen years of age.

At the hearing, plaintiff noted special difficulties in taking her driver's license examination and being unable to keep pace at cleaning jobs. [Tr. 47-48]. Plaintiff testified she could read "a little bit" and write "a little bit." [Tr. 53]. The evidence in the record demonstrating significant subaverage functioning during the development period could be supported by substantial evidence.

The findings of Dr. Lanthorn, if credited, provide substantial support for finding that plaintiff has a valid full scale IQ of 59 or less. After examining plaintiff, Dr. Lanthorn found that plaintiff had a full scale IQ of 53 and diagnosed her as functioning in the mild mentally retarded range. [Tr. 463]. In describing these results, Dr. Lanthorn stated:

> The results of this psychological evaluation reveal a woman who is functioning in the Mild Mental Retardation Range with an overall Full Scale IQ – 53. All of her scores on the WAIS-IV were in the Extremely Low Range and indicate a pattern of endogenous mental retardation. She has extremely limited academic/educational skills and appears to read at approximately the second to third grade level.

11

[Tr. 470]. Despite this evidence, the ALJ did not discuss 12.05B at all in his opinion.

The error in not addressing 12.05B is not harmless in this instance because the ALJ did not later address plaintiff's mental impairments in determining her residual functional capacity. In his examination findings, Dr. Lanthorn also recognized that plaintiff would have mild to moderate limitations learning and performing simple tasks and performing them on a regular basis. [Tr. 470]. He found that she would have marked limitations interacting with co-workers and moderate or greater limitations adapting to workplace changes. [Tr. 470]. The ALJ did not discuss or credit these findings, and instead, found that plaintiff had no mental limitations on her residual functional capacity.

The ALJ's failure to appropriately discuss Dr. Lanthorn's opinion or afford weight to it, combined with the ALJ's failure to discuss application of the 12.05B criteria and his ultimate conclusion that plaintiff could perform medium work without any nonexertional mental limitations, constitutes reversible error. Accordingly, the Court finds that this case must be remanded to the Commissioner for further consideration and discussion of plaintiff's mental capacity. In addition, given that Dr. Castellani's report and Ms. Garland's report are both over five years old and given the failure to administer the requested malingering tests (TOMM), consideration should be given as to whether to seek a new psychological and intelligence testing evaluation for comparison and contrast analysis.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion For Summary Judgment [Doc. 12] will be **GRANTED IN PART AND DENIED IN PART** and the Commissioner's Motion for Summary Judgment [Doc. 14] will be **GRANTED IN PART AND DENIED IN PART**, as follows**.**

This case will be **REMANDED** to the Commissioner, with the following instructions for reconsidering this decision: (1) state the weight afforded to the mental examination performed by Wayne Lanthorn, Ph.D., on September 15, 2010, specifically to his findings regarding plaintiff's IQ; (2) state the basis for affording such weight, or lack of weight, to Dr. Lanthorn's opinion; (3) discuss whether the evidence in this case supports a finding that plaintiff is mentally retarded pursuant to Listing 12.05B of 20 C.F.R. Pt. 404, Subpart P, Appendix 1; and (4) determine whether a new psychological and/or intelligence testing evaluation is needed.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE